**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| PETER SHUMWAY and NAOMI SHUMWAY, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No.: _____ ) ) |
| v. | ) JURY DEMAND ) |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) ) ) ) ) |
| Defendant. | ) |

## COMPLAINT

COME NOW the Plaintiffs, Peter Shumway and Naomi Shumway ("Plaintiffs"), individually and on behalf of others similarly situated, and for their Complaint against Allstate Vehicle and Property Insurance Company ("Allstate"), state and allege the following:

### OVERVIEW OF CLAIMS

1. This is a class action case arising out of a dispute between Arizona policyholders and their property insurer. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be "depreciated" by Allstate when Allstate calculates its actual cash value ("ACV") payment obligations for structural property losses and does not address the subject matter anywhere within its policies of insurance.

2. Pursuant to Allstate's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to damaged buildings and structures. On the other hand, replacement cost value ("RCV") payments are made retrospectively, after repairs have been completed.

3.  In Arizona and throughout the United States, Allstate uses two types of policy forms—those policy forms that expressly address the subject matter of future repair labor and expressly permit the withholding of future labor as "depreciation," and those policies that do not. Policy forms that expressly address and permit the depreciation of labor are referred to herein as "labor permissive forms." These forms will expressly use the terms "labor" and "depreciate" or "depreciation" within the text of the policy or endorsement.

4.  For example, Allstate has sometimes used a labor permissive policy form in Arizona that states:

> Throughout the policy, when determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated. *Such costs subject to depreciation may include*, but are not limited to, goods, materials, equipment, *labor,* overhead and profit, taxes, fees or similar charges.

*See* Ex. A (Allstate Amendatory Endorsement – AP 4972) (emphasis added).

5.  This lawsuit does *not* involve any insurance claims wherein Allstate was expressly permitted to depreciate labor under a policy containing a labor permissive form. Rather, this lawsuit only concerns claims for which Allstate affirmatively chose to depreciate future repair labor after Allstate affirmatively chose not to issue the insurance policy with a labor permissive form.

6.  Defendant and other Allstate property insurers have likewise faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments in the absence of a labor permissive form. *See, e.g., Larey v. Allstate Prop. & Cas. Ins. Co.*, No. 4:14-cv-04008-SOH (W.D. Ark.); *Perry v. Allstate Indemnity Company*, Case No. 1:16-cv-01522 (N.D. Ohio); *Lado v. Allstate Vehicle and Property Insurance Company*, Case No. 1:20-cv-01417 (N.D. Ohio); *Ferguson-Luke v. Allstate Property and Casualty Insurance Company*,

Case No. 1:20-cv-807 (N.D Ohio); *Maniaci v. Allstate Insurance Company*, Case No. 1:20-cv-00613 (N.D. Ohio); *Huey v. Allstate Vehicle and Property Insurance Company*, Case No. 4:19-cv-00153 (N.D. Miss.); *Sims, et al. v. Allstate Vehicle and Property Insurance Company, et al.*, Case No. 5:22-cv-00580 (W.D Tex); *Hester, et al. v. Allstate Vehicle and Property Insurance Company, et al.*, Case No. 20L0462 (Ill. Cir. Ct., St. Clair Cnty.). While some of these cases are still pending, the ones that have been resolved resulted in Allstate insurers only engaging in the practice under policies containing a labor permissive form.

7. Most property insurers in Arizona do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Arizona do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of a labor permissive form. Here, however, Allstate withheld future labor as depreciation under policies that did not contain a labor permissive form.

8. The issue presented is a question of law (*i.e.*, whether labor may be depreciated in the absence of a labor permissive form) that has been addressed by various courts across the country, including the Arizona Supreme Court in *Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617 (Ariz. 2022), wherein the supreme court held that an insurer may not depreciate labor when calculating ACV under the "replacement cost less depreciation" ("RCLD") methodology in the absence of a labor permissive form.

9. This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiffs and putative class members' ACV payments.

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

10. Plaintiffs are residents of Mesa, Arizona.

11. Allstate is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois.

12. Allstate offers property insurance in several states, including Arizona.

13. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Allstate's property insurance policyholders who are similarly situated.

14. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over Allstate as Allstate has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Arizona.

16. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this District.

## FACTS

**A.    Introduction and Scope of Lawsuit**

17. Allstate sells property insurance coverage for, *inter alia*, homes and commercial buildings in Arizona.

18. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

19. This lawsuit only concerns ACV coverage and ACV payments.

20. Further, this lawsuit only concerns claims for which Allstate itself accepted coverage and then Allstate itself chose to calculate ACV exclusively pursuant to the RCLD methodology.

21. Further, this lawsuit only concerns future repair labor. This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) becomes "embedded" within the building product or home and can be depreciated as part of an ACV calculation. *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 620 n.2 (Ariz. 2022).

**B.     The Property Insurance Policy and Casualty Loss**

22. Plaintiffs contracted with Allstate for an insurance policy providing coverage for certain losses to their house located at 1007 E. 8th St., Mesa, Arizona (the "Insured Property"). The policy number was 000838938884 (the "Policy").

23. Plaintiffs paid Allstate premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

24. On or about December 9, 2019, the Insured Property suffered damage covered by the Policy. The damage to the Insured Property required replacement and/or repair.

25. Plaintiffs timely submitted a claim to Allstate requesting payment for the covered loss.

26. Allstate determined the loss to the Insured Property was covered by the terms of the Policy.

27. Allstate calculates its ACV payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Allstate subtracts the estimated depreciation.

28. The Policy does not contain a labor permissive form, and the Policy does not allow the withholding of labor as depreciation for any portion of Plaintiffs' loss.

29. The Policy requires that ACV payment obligations be calculated pursuant to the RCLD methodology. The Policy does not expressly provide for the calculation of Allstate's ACV payment obligations pursuant to the broad evidence rule.

C. **Allstate's Calculation of Plaintiffs' ACV Payments**

30. In adjusting Plaintiffs' claim, Allstate affirmatively and unilaterally chose to use a RCLD methodology to calculate the loss and to make its ACV payments. Allstate did not use any other methodology to calculate Plaintiffs' ACV payments.

31. After the loss, Allstate sent adjusters to inspect the damage and estimate the ACV. Allstate uses commercially available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to Plaintiffs is called Xactimate®.

32. Xactimate® software exclusively uses the RCLD methodology to calculate the ACV of property damage to buildings or structures. Xactimate® does not use any other methodology to calculate ACV, such as, e.g., the calculation of ACV through a fair market value as determined by a real estate appraisal.

33. Because Xactimate® does not use any methodology to calculate ACV other than RCLD methodology, a property insurer only makes an ACV payment through Xactimate® after the property insurer itself has affirmatively determined and agreed to use the RCLD methodology.

34. As set forth in written Xactimate® estimates provided to Plaintiffs by Allstate, Allstate determined that Plaintiffs had suffered a covered loss to their property. The estimates included the cost of materials and labor required to complete the repairs.

35. In calculating its ACV payment obligations to Plaintiffs, Allstate subtracted from the estimates the deductible provided for in the policy plus an additional amount for depreciation. Plaintiffs were underpaid on their ACV claim as more fully described below.

36. Allstate did not conduct an appraisal of Plaintiffs' losses.

37. Allstate did not conduct an appraisal of Plaintiffs' Insured Property.

38. Allstate has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

**D.     Allstate's Practice Of Withholding Labor As Depreciation**

39. When it calculated Plaintiffs' ACV benefits owed under the Policy, Allstate withheld costs for both the materials and labor required to repair or replace the buildings and structures as depreciation, even though labor does not depreciate in value over time. Allstate withheld labor costs throughout its ACV calculations as depreciation.

40. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Allstate allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

41. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and the contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

42. Allstate's withholding of labor costs as depreciation associated with the repair or replacement of Plaintiffs' property resulted in Plaintiffs receiving ACV payments for their loss in

amounts less than they were entitled to receive under the Policy. Allstate breached its obligations under the Policy by improperly withholding the cost of labor as depreciation.

43.     Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided.  To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

44.     While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold future repair labor as depreciation under the policy forms at issue in Arizona.

45.     Allstate's failure to pay the full cost of the future labor necessary to return Plaintiffs' property to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their loss at the time of their ACV payments.

46.     Plaintiffs dispute whether portions of the agreed-to and undisputed amounts of future labor, as determined by Allstate itself, may be withheld by Allstate as "depreciation" from Allstate's ACV payments under the terms and conditions of its insurance policies.

47.     Allstate materially breached its duty to indemnify Plaintiffs by withholding labor costs from its ACV payments as depreciation, thereby paying less than Plaintiffs were entitled to receive under the terms of their policy, including but not limited to depriving Plaintiffs of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

**AMOUNT IN CONTROVERSY**

48.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

49. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

50. The proposed class that Plaintiffs seeks to represent is tentatively defined as follows:

> All Allstate's policyholders (or their lawful assignees) who made:
>
> (1) a structural damage claim for property located in Arizona; and
>
> (2) for which Allstate accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and
>
> (3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.
>
> The class period for the proposed class is the maximum time-period as allowed by Arizona law.
>
> The class excludes any claims for which the applicable limits of insurance were exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

51. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Allstate and its

subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

52. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower ACV claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any, or if the policyholders proceed to appraisal, and the appraisal panel follows the law concerning the so-called depreciation of labor. However, policyholders like Plaintiffs who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

53. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Arizona have been damaged by Allstate's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Allstate or from information readily available to Allstate.

54. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

55. Allstate has acted on grounds generally applicable to the proposed class in that Allstate has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Allstate will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

56. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Allstate's policy forms allow the withholding of labor costs in the calculation of ACV payments under the RCLD methodology;

    b. Whether Allstate's policy language is ambiguous;

    c. Whether Allstate's withholding of labor costs in the calculation of ACV payments breaches Allstate's insurance policy forms;

    d. Whether Allstate has a custom and practice of withholding labor costs in the calculation of ACV payments;

    e. Whether Plaintiffs and members of the proposed class have been damaged as a result of Allstate's withholding of labor costs in the calculation of ACV payments owed; and

    f. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

57. Plaintiffs' claims are typical of the claims of the proposed class members, as they are similarly affected by Allstate's customs and practices concerning the withholding of labor. Further, Plaintiffs claims are typical of the claims of the proposed class members because Plaintiffs claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

58. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the

proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and Plaintiffs' counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be class representatives.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

60. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

61.     Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Allstate's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

62.     Class certification is further warranted because Allstate has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

63.     Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I - BREACH OF CONTRACT

64.     Plaintiffs restate and incorporate by reference all preceding allegations.

65.     Allstate entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Allstate and Plaintiffs,

and members of the proposed class, as well as the manner in which claims for covered losses are handled.

66. These policies of insurance are binding contracts under Arizona law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

67. Allstate drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Allstate calculates ACV under a RCLD methodology.

68. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

69. Allstate breached its contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

70. Additionally, Allstate's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefited and continue to benefit Allstate. Likewise, Allstate's actions damaged and continue to damage Plaintiffs and members of the proposed class.

71. Allstate's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

72. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

**COUNT II - DECLARATORY JUDGMENT AND RELIEF**

73. Plaintiffs restate and incorporate by reference all preceding allegations.

74. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

75. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

76. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

77. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Allstate's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

78. Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

79. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.     Enter a declaratory judgment, declaring that Allstate's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class;

3.     Enter a declaration, and any preliminary and permanent injunction and equitable relief against Allstate and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.     Enter an order that Allstate specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.     Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.     Award compensatory damages to Plaintiffs and members of the proposed class for all amounts to which they are entitled;

7.     Award attorney's fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8.     Pre- and Post-Judgment interest; and

9.     Grant such further and additional relief as the Court deems necessary and proper.

Dated: April 25, 2023

*s/ Michaile J. Berg*
Michaile J. Berg (AZ Bar #027166)
BERG LAW, PLLC
8710 E. Vista Bonita Dr.
Scottsdale, Arizona 85255
(480) 745-7440

mberg@berg.law

McWHERTER SCOTT BOBBITT PLC
J. Brandon McWherter (TN Bar #21600)*
341 Cool Springs Blvd, Suite 230
Franklin, TN  37067
(615) 354-1144
brandon@msb.law

ERIK PETERSON LAW OFFICES, PSC
Erik D. Peterson (KY Bar #93003)*
110 W. Vine St., Ste. 300
Lexington, KY 40507
Telephone: 800-614-1957
erik@eplo.law

SNODGRASS LAW LLC
T. Joseph Snodgrass (MN Bar #231071)*
100 South 5th Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

*Attorneys for Plaintiffs and Putative Class Representative*

*To be admitted Pro Hac Vice